FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

15 AUG -3  PM 12: 02

CLERK, U.S.
MIDDLE DISTRICT OF FLORIDA
FT. MYERS. FLORIDA

MICHELLE WETMORE,

Plaintiff,

CASE NO.:

-vs-

MONEY MART, INC. D/B/A
CHECK MART OF FLORIDA, INC.,

2: 15-cv-464-FtM-99CM

Defendant.

_____/

## COMPLAINT

Plaintiff, MICHELLE WETMORE, by and through her undersigned counsel, sues the Defendant, MONEY MART, INC. D/B/A CHECK MART OF FLORIDA, INC., and in support thereof respectfully alleges the following:

1.  Plaintiff alleges violations of the Telephone Consumer Protection Act, 47 U.S.C. §227 *et seq.* ("TCPA") and the Florida Consumer Collections Practices Act, Chapter 559, *et seq.* ("FCCPA").

## INTRODUCTION

2.  The TCPA was enacted to prevent companies like MONEY MART, INC. D/B/A CHECK MART OF FLORIDA, INC. from invading American citizen's privacy and prevent abusive "robo-calls."

3.  "The TCPA is designed to protect individual consumers from receiving intrusive and unwanted telephone calls." *Mims v. Arrow Fin. Servs., LLC*, -US--, 132 S.Ct., 740, 745, 181, L.Ed. 2d 881 (2012).

4.      "Senator Hollings, the TCPA's sponsor, described these calls as 'the **\*1256** scourge of
modern civilization, they wake us up in the morning; they interrupt our dinner at night; they
force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the
wall.'" 137 Cong. Rec. 30, 821 (1991). Senator Hollings presumably intended to give telephone
subscribers another option: telling the autodialers to simply stop calling." *Osorio v. State Farm
Bank, F.S.B.*, 746 F. 3d 1242 (11th Cir. 2014).

5.      According to the Federal Communications Commission (FCC), "Unwanted calls and
texts are the number one complaint to the FCC. There are thousands of complaints to the FCC
every month on both telemarketing and robocalls. The FCC received more than 215,000 TCPA
complaints in 2014." https://www.fcc.gov/document/fact-sheet-consumer-protection-proposal

## JURISDICTION AND VENUE

6.      This is an action for damages exceeding Seventy-Five Thousand Dollars ($75,000.00)
exclusive of interest and costs.

7.      Jurisdiction and venue for purposes of this action are appropriate and conferred by 28
U.S.C. § 1331, Federal Question Jurisdiction, as this action involves violations of the TCPA
and/or by F.S. § 47.011 and/or by 28 U.S.C. § 1332, diversity jurisdiction.

8.      Subject matter jurisdiction, federal question jurisdiction, for purposes of this action is
appropriate and conferred by 28 U.S.C. § 1331, which provides that the district courts shall have
original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the
United States; and this action involves violations of 47 U.S.C. § 227(b)(1)(A)(iii).  See *Mims v.
Arrow Fin. Servs., LLC*, 132 S.Ct. 740, 748 (2012) and *Osorio v. State Farm Bank, F.S.B.*, 746
F.3d 1242, 1249 (11th Cir. 2014).

9.      Venue is proper in this District because the Plaintiff resides in this District (Lee County),

the phone calls were received in this District, and the Defendant transacts business in Lee

County, Florida.

## FACTUAL ALLEGATIONS

10.     Plaintiff is a natural person, and citizen of the State of Florida, residing in Lee County,

Florida, and resides in this District.

11.     Plaintiff is a "consumer" as defined in Florida Statute 559.55(2).

12.     Plaintiff is an "alleged debtor."

13.     Plaintiff is the "called party." See *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637,

643 (7th Cir. 2012), reh'g denied (May 25, 2012).

14.     Defendant is a "creditor" as defined by Florida Statute §559.55(3).  Defendant extended

credit to Plaintiff from which a debt arose.

15.     The debt that is the subject matter of this complaint is a "consumer debt" as defined by

Florida Statute §559.55(1).

16.     Defendant is corporation with a principal place of business and/or office for transacting

its business located at 1436 Lancaster Ave., Suite 300, Berwyn, PA 19312.

17.     Defendant has a registered agent in Florida: NRAI Services Inc., 1200 South Pine Island

Road, Plantation, FL 33324.

18.     The conduct of Defendant which gives rise to the cause of action herein alleged occurred

in this District, Lee County, Florida, by the Defendant's placing of illegal calls to Lee County,

Florida.

19.     Defendant, at all material times, was attempting to collect on a payday advance loan

which was issued and serviced by Defendant on or about May 2014.

3

20.    Defendant knowingly and/or willfully harassed and abused Plaintiff on a constant basis by calling Plaintiff's cellular telephone number up to six (6) times a day from approximately June, 2014 through the filing of this complaint, with such frequency as can reasonably be expected to harass, all in an effort related to the collection of the subject account.

21.    Upon information and belief, some or all of the calls the Defendant made to Plaintiff's cellular telephone number were made using an "automatic telephone dialing system" which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator (including but not limited to a predictive dialer) or an artificial or prerecorded voice; and to dial such numbers as specified by 47 U.S.C § 227(a)(1) (hereinafter "autodialer calls"). Plaintiff will testify that she heard a pause before being connected to Defendant's representative. Plaintiff will also testify that some, if not all of the voice-message recordings she received on her cell phone were pre-recorded.

22.    All calls to the Plaintiff's cell phone were made without express consent. Plaintiff told Defendant to stop calling as soon as the calls started in June, 2014.

23.    Plaintiff is the subscriber, regular user and carrier of the cellular telephone number, (239) ***-7789, and was the called party and recipient of Defendant's autodialer calls.

24.    The autodialer calls from Defendant came from the telephone numbers including but not limited to 866-433-1001, 866-992-5626, and 801-933-4511, and when those number is called, an automated voice answers and identifies itself as "Corporate Office of Money Mart, The Check Cashing Store, American Payday Loans."

25.    After receiving numerous autodialer calls since June, 2014 to her cellular telephone number from Defendant, Plaintiff spoke to a representative of Defendant on July 14, 2015 and

again requested the calls from Defendant stop, informed the representative they had previously requested the calls to stop, and told Defendant's representative to "stop calling me."

26.    Due to the volume of calls received from Defendant, Plaintiff was unable to catalogue every single call, however below is a small sampling of said calls:

1) May 14, 2015 at 1:26 pm from 866-992-5626

2) May 15, 2015 at 1:26 pm from 866-992-5626

3) May 18, 2015 at 1:33 pm from 866-992-5626

4) May 19, 2015 at 1:58 pm from 866-992-5626

5) May 20, 2015 at 4:29 pm from 801-933-4511

6) May 21, 2015 at 2:07 pm from 866-992-5626

7) May 22, 2015 at 4:05 pm from 801-933-4511

8) May 26, 2015 at 4:05 pm from 801-933-4511

9) May 27, 2015 at 4:06 pm from 801-933-4511

10) May 28, 2015 at 1:33 pm from 866-992-5626

11) May 28, 2015 at 2:24 pm from 866-992-5626

12) May 29, 2015 at 2:18 pm from 866-992-5626

13) June 1, 2015 at 12:54 pm from 866-992-5626

14) June 3, 2015 at 9:39 am from 866-433-1001

15) June 4, 2015 at 10:09 am from 866-433-1001

16) June 8, 2015 at 11:10 am from 866-992-5626

17) June 9, 2015 at 11:26 am from 866-992-5626

18) June 10, 2015 at 11:13 am from 866-992-5626

19) June 11, 2015 at 9:57 am from 866-433-1001

20) June 12, 2015 at 11:246 am from 866-992-5626

21) June 17, 2015 at 9:57 am from 866-433-1001

22) June 18, 2015 at 10:04 am from 866-433-1001

23) June 24, 2015 at 10:04 am from 866-433-1001 (see Exhibit A)

24) June 25, 2015 at 10:03 am from 866-433-1001 (see Exhibit A)

25) July 1, 2015 at 9:12 am from 866-992-5626 (see Exhibit B)

26) July 2, 2015 at 1:00 pm from 866-433-1001 (see Exhibit A)

27) July 6, 2015 at 12:59 pm 866-433-1001 (see Exhibit C)

28) July 7, 2015 at 12:46 pm from 866-433-1001 (See Exhibit C)

29) July 10, 2015 at 1:06 pm from 866-433-1001 (See Exhibit C)

27.     The autodialer calls from Defendant continued, at times, six (6) times a day from June, 2014 through the filing of this complaint. Defendant has, or should be in possession and/or control of call logs, account notes, autodialer reports and/or other records that detail the exact number of all autodialer calls made to Plaintiff.

28.     The Defendant has a corporate policy to use an automatic telephone dialing system or a pre-recorded or artificial voice, and to make autodialer calls just as they did to Plaintiff's cellular telephone in this case, with no way for the called party and recipient of the calls, or the Defendant, to permit the removal of the incorrect number.

29.     Despite actual knowledge of their wrongdoing, the Defendant continued the campaign of autodialer calls, well-beyond June 2014, when Plaintiff first advised Defendant to stop calling.

30.     Defendant's corporate policy is structured as to continue to call individuals like the Plaintiff, despite the individual, like Plaintiff, advising Defendant to stop calling.

31.     Defendant's corporate policy provided no means for the Plaintiff to have her cellular number removed from the call list, or otherwise permit the cessation of and/or suppression of calls to Plaintiff.

32.     Defendant has numerous other federal lawsuits pending against them alleging similar violations as stated in this complaint.

33.     Defendant has numerous complaints against them across the country asserting that their automatic telephone dialing system continues to call the wrong people or people who have revoked consent to be called.

34.     Defendant knowingly employed methods and/or has a corporate policy designed to harass and abuse individuals and has set up their autodialer in a manner which makes it virtually impossible for the autodialer calls to stop.

35.     Defendant knowingly employed methods that did not permit the cessation of or suppression of autodialer calls to Plaintiff's cellular telephone.

36.     Due to Defendant's constant autodialer calls and demands for payment Plaintiff has suffered statutory and actual damages in the form of emotional distress, frustration, worry, anger, and/or loss of capacity to enjoy life.

## COUNT I
### (Violation of the TCPA)

37.     Plaintiff re-alleges and incorporates Paragraphs one (1) through thirty-six (36) above as if fully stated herein.

38.     None of Defendant's autodialer calls placed to Plaintiff were for "emergency purposes" as specified in 47 U.S.C. § 227(b)(1)(A).

7

39.     Defendant violated the TCPA, with respect to all of its autodialer calls made to Plaintiff's cellular telephone number after Plaintiff revoked consent to be called and without Plaintiff's prior express consent as she never provided Defendant with her telephone number or consent to contact her.

40.     The Defendant willfully and/or knowingly violated the TCPA, especially for each of the autodialer calls made to Plaintiff's cellular telephone after Plaintiff notified Defendant in June, 2014 when Plaintiff verbally withdrew, revoked, and/or terminated any alleged consent Defendant believed it had to contact her.

41.     Defendant repeatedly placed non-emergency telephone calls to Plaintiff's cellular telephone using an automatic telephone dialing system or prerecorded or artificial voice without Plaintiff's prior express consent in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

**COUNT II**
**(Violation of the FCCPA)**

42.     Plaintiff incorporates Paragraphs one (1) through forty-one (41).

43.     At all times relevant to this action Defendant is subject to and must abide by the law of Florida, including Florida Statute §559.72.

44.     Defendant has violated Florida Statute §559.72(5) which states that no person shall "disclose to a person other than debtor or her or his family information affecting the debtor's reputation, whether or not for credit worthiness, with knowledge or reason to know that the other person does not have a legitimate business need for the information or that the information is false." Defendant went into Plaintiff's place of employment Wendy's on several occasions.

While in the presence of Plaintiff's manager and employer, Defendant disclosed the existence of the debt. Specifically, Defendant would loudly ask "When are you going to pay your debt?" in front of Plaintiff, her Manager, and her co-workers.

45.     Defendant has violated Florida Statute §559.72(7) by willfully communicating with the debtor with such frequency as can reasonably be expected to harass the debtor Defendant called Plaintiff up to several times daily which is a frequency that can be reasonably expected to harass. Plaintiff will testify that at the start she received at times up to six phone calls per day.

46.     Defendant's actions have directly and proximately resulted in Plaintiff's prior and continuous sustaining of damages as described by Florida Statute §559.77.


**WHEREFORE**, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant, MONEY MART, INC. D/B/A CHECK MART OF FLORIDA, INC., for statutory damages, actual damages, treble damages, costs, interest, and any other such relief the court may deem just and proper.

Respectfully submitted,

Octavio "Tav" Gomez, Esquire
Morgan & Morgan, Tampa, P.A.
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tele: (813) 223-5505
Fax: (813) 222-4725
Florida Bar #: 338620
Attorney for Plaintiff
TGomez@ForThePeople.com

9